IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LARRY LAUER,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br><br>CREDIT CONTROL SERVICES,<br><br>　　　　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 1:14-cv-00062-DN<br><br>District Judge David Nuffer |

　　　　Plaintiff Larry Lauer sues under the Fair Debt Collection Practices Act ("FDCPA") alleging that defendant Credit Control Services ("CCS") violated the FDCPA by falsely representing "the character, amount, or legal status" of a debt.[1] This order resolves CCS's Motion for Summary Judgment ("CCS's Motion on the Debt") which seeks summary judgment on Mr. Lauer's claim for misrepresentation of a debt, which he claims not to owe.[2]

　　　　CCS attempted to collect a $114.25 debt from Mr. Lauer on behalf of non-party AT&T Mobility ("AT&T") for mobile phone services AT&T had, according to AT&T, previously provided to Mr. Lauer.[3] Mr. Lauer contends that he does not owe any debt to CCS or AT&T, that he was told as much by an AT&T representative,[4] and that as a result, CCS has falsely represented that Mr. Lauer owed a debt he does not owe.[5]

---

[1] First Amended Complaint ¶ 9, at 2, docket no. 28, filed Apr. 13, 2015.

[2] Defendant's Motion for Summary Judgment ("CCS's Motion on the Debt"), docket no. 18, filed Oct. 13, 2014.

[3] *Id.* at Statement of the Facts ¶ 8; Plaintiff's Response to Defendant's Motion for Summary Judgment ("Lauer's Response on the Debt") at 2 (responding to Statement of the Facts ¶ 3), docket no. 20, filed Nov. 13, 2014.

[4] Lauer's Response on the Debt at 2 (responding to Statement of the Facts ¶ 9).

[5] *Id.* at 5–6.

CCS brought its Motion on the Debt shortly after Mr. Lauer had deposed CCS's 30(b)(6) witness.[6] At the time it was filed, this motion would have resolved the case. But approximately three weeks after CCS's Motion on the Debt was filed, Mr. Lauer sought leave to amend his Complaint to add two additional claims under the FDCPA.[7] After filing his Motion for Leave to Amend, Mr. Lauer then responded[8] to CCS's Motion on the Debt and CCS filed its Reply.[9] With CCS's Motion on the Debt fully briefed, Mr. Lauer's Motion for Leave to Amend was granted and his First Amended Complaint was filed.[10] Subsequently, CCS filed a second motion for summary judgment addressing the claims added in the First Amended Complaint.[11] This order addresses CCS's Motion on the Debt, which is now a motion for *partial* summary judgment because the First Amended Complaint added additional claims beyond this motion.

For the reasons that follow, CCS's Motion on the Debt is GRANTED.

## CONTENTS

OVERVIEW OF MOTION ........................................................................................................... 3
UNDISPUTED FACTS ................................................................................................................. 4
DISPUTED FACTS ....................................................................................................................... 6
ANALYSIS ..................................................................................................................................... 9
    I. Mr. Lauer's Amended Complaint Simply Converts CCS's Motion on the Debt into a
        Motion for Partial Summary Judgment................................................................... 9
    II. The Declaration of Crystal Stephens is Not Stricken................................................. 10
    III. CCS is Entitled to Rely on AT&T's Representation Regarding the Debt................. 12
    IV. There Are No Genuine Disputes of Material Fact and CCS is Entitled to Partial
        Summary Judgment. ............................................................................................. 14
ORDER ......................................................................................................................................... 16

---

[6] Plaintiff's Reply Memorandum in Support of Motion for Leave to Amend Complaint at 2, docket no. 25, filed Dec. 5, 2014.

[7] First Amended Complaint ¶¶ 10–11, at 2.

[8] *See* Lauer's Response on the Debt.

[9] Defendant's Reply in Support of its Motion for Summary Judgment ("CCS's Reply on the Debt"), docket no. 24, filed Nov. 26, 2014.

[10] Memorandum Decision and Order Granting Motion to Amend Complaint, docket no. 27, filed Apr. 13, 2015.

[11] Defendant's Second Motion for Summary Judgment, docket no. 30, filed June 5, 2015.

**OVERVIEW OF MOTION**

CCS's Motion on the Debt makes two principal arguments. First, CCS argues that it is entitled to rely on the statements of the underlying creditor, AT&T, that an actual debt exists.[12] As a result, CCS argues, it cannot be held liable for any alleged misrepresentation of AT&T.[13] Second, CCS contends that the undisputed facts of the case indicate that Mr. Lauer indeed does owe a debt to AT&T, and that CCS has therefore not engaged in unlawful misrepresentation under the FDCPA.[14]

Mr. Lauer responds by first arguing that summary judgment is inappropriate given that he has sought leave to amend his complaint so that CCS's "Motion does not apply to any new allegations included in the Amended Complaint."[15] Mr. Lauer further argues that alleged discovery violations in the form of insufficient initial disclosures violated the court's scheduling order and warrant denial of summary judgment.[16] Specifically, Mr. Lauer argues that the use in CCS's Motion of a Declaration of Crystal Stephens, Associate Director of Credit & Collects of AT&T, was impermissible because Ms. Stephens was never disclosed as a witness.[17] Mr. Lauer next argues that, based in part on the aforementioned discovery violations, there are material disputes of fact remaining, and that CCS's assertion that the undisputed facts show that a debt is owed is false.[18] Finally, Mr. Lauer contends that CCS has misstated the law regarding its

---

[12] Motion for Summary Judgment at 7–8

[13] *Id.*

[14] *Id.*

[15] Lauer's Response on the Debt at 5.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 5–6.

entitlement to rely on the underlying creditor, and that given the disputed facts, summary judgment is inappropriate.[19]

## UNDISPUTED FACTS

After careful review of the statements of facts and evidence provided by both parties, the following facts are not in dispute for purposes of the present motion:

1. Mr. Lauer opened his account with AT&T on or about October 13, 2011.[20]

2. Mr. Layer's AT&T account number is 265030212788.[21]

3. Mr. Lauer was billed on a regular thirty-day billing cycle.[22]

4. Mr. Lauer's monthly bill totaled $114.25 per month for talk and data services for two telephones.[23]

5. Mr. Lauer was billed $114.25 for services from AT&T Mobility for service dates of September 15, 2013, through October 14, 2013.[24]

6. On November 7, 2013, AT&T emailed Mr. Lauer a notice that his payment had been processed. Mr. Lauer replied to that notice, ordering AT&T not to take the payment, although AT&T had already processed the payment, and although the notice specifically said not to reply because reply messages were automatically deleted.[25]

---

[19] *Id.* at 6–7.

[20] *See* Declaration of Crystal Stephens ("Stephens Decl.") ¶ 4, attached as Exhibit A to CCS's Motion on the Debt, docket no. 18-1, filed Oct. 13, 2014.

[21] *Id.* ¶ 5

[22] *Id.* ¶ 6.

[23] *Id.* ¶ 9.

[24] *Id.* ¶ 11.

[25] *Id.*

7.     Mr. Lauer was sent a wireless statement for bill cycle dates October 15, 2013 – November 14, 2013 reflecting a zero balance based upon his November 7, 2013, payment.[26]

8.     The AT&T Wireless Statement for bill cycle dates October 15, 2013 – November 14, 2013 is a business record of AT&T kept in the ordinary course and scope of business and accurately reflects the statement that was sent to Mr. Lauer.[27]

9.     Mr. Lauer's November 7, 2013 payment of $114.25 was reversed and returned on or about November 18, 2013.[28]

10.    Mr. Lauer was sent AT&T Wireless Statement for bill cycle dates November 15, 2013 – December 14, 2013 reflecting a past due balance of $114.25 based upon the return of his November 7, 2013 payment on November 18, 2013.[29]

11.    The AT&T Wireless Statement for bill cycle dates November 15, 2013 – December 14, 2013 is a business record of AT&T kept in the ordinary course and scope of business and accurately reflects the statement that was sent to Mr. Lauer.[30]

12.    AT&T did not add fees for services provided by AT&T after Mr. Lauer closed the account.[31]

13.    AT&T did not add fees for the returned payment issued by Mr. Lauer.[32]

---

[26] *See* AT&T Wireless Statement for bill cycle dates October 15, 2013 – November 14, 2013, attached as Exhibit B to CCS's Motion on the Debt, docket no. 18-2, filed Oct. 13, 2014.

[27] Stephens Decl. ¶ 14.

[28] *Id.* ¶¶ 10, 12; Affidavit of Larry Lauer in Opposition to Defendant's Motion for Summary Judgment ("Lauer Aff.") ¶ 5, docket no. 22, filed Nov. 13, 2014.

[29] *See* AT&T Wireless Statement for bill cycle dates November 15, 2013 – December 14, 2013, attached as Exhibit C to CCS's Motion on the Debt, docket no. 18-3, filed Oct. 13, 2014.

[30] Stephens Decl. ¶ 14.

[31] *Id.* ¶ 15.

[32] *Id.* ¶ 16.

14. On January 16, 2014, CCS was assigned an account for Mr. Lauer in the amount of $114.25 from AT&T for collection.[33]

15. The account CCS received was for cellular phone services provided by AT&T to Mr. Lauer.[34]

## DISPUTED FACTS

After careful review of the statements of facts and evidence provided by both parties, the following facts remain in dispute for purposes of the present motion:

1. CCS states that the amount assigned to CCS for collection was $114.25 based upon the amount owed by Mr. Lauer from the reversed November 7, 2013 payment[35] and supports this proposed fact with a declaration of the Associate Director of Credit & Collections of AT&T, Crystal Stephens.[36] Mr. Lauer denies this proposed fact[37] and supports his denial with his own affidavit that AT&T told him the account was paid in full.[38] Furthermore, Mr. Lauer objects to the testimony of Ms. Stephens under Fed. R. Civ. P. 37(c)(1).[39]

2. Mr. Lauer states that he called to cancel his account with AT&T on or about October 2, 2013[40] and supports this proposed fact with his own affidavit.[41] CCS states that Mr.

---

[33] *Id.* ¶ 17.

[34] *Id.* ¶ 11.

[35] CCS's Motion on the Debt ¶ 3, at 4.

[36] Stephens Decl. ¶ 3.

[37] Lauer's Response on the Debt at Section II B. Response to Defendant's Undisputed Material Facts ¶ 3.

[38] Lauer Aff ¶ 3.

[39] Lauer's Response on the Debt at Section II B. Response to Defendant's Unidsputed Material Facts ¶ 3.

[40] *Id.* at Section III. Statement of Additional Material Facts ¶ 1.

[41] Lauer Aff. ¶ 2.

Lauer has not provided a call record or name of an individual he spoke to and that this proposed fact is irrelevant for purposes of CCS's Motion on the Debt.[42]

    3.    Mr. Lauer states that because AT&T told him that he would have to pay an early termination fee if he cancelled service before the end date of approximately October 15, 2013, he agreed that the cancellation date should be October 14, 2013, and not October 2, 2013[43] and supports this proposed fact with his own affidavit.[44] As above, CCS states that Mr. Lauer has not provided a call record or name of an individual he spoke to and that this proposed fact is irrelevant for purposes of CCS's Motion on the Debt.[45]

    4.    Mr. Lauer states that the AT&T agent on the call stated that Mr. Lauer's "account was already paid up through [the end of the contract] and that nothing more would need to be paid"[46] and supports this proposed fact with his own affidavit.[47] CCS denied this proposed fact, citing the Declaration of Crystal Stephens[48] and an AT&T Wireless Statement.[49]

    5.    CCS states that by automatic payment, on or about November 7, 2013, Mr. Lauer made a payment of $114.25 for the service dates of September 15, 2013 – October 14, 2013, from AT&T Mobility[50] and supports this proposed fact with the Declaration of Crystal

---

[42] CCS's Reply on the Debt at 1.

[43] Lauer's Response on the Debt at Section III. Statement of Additional Material Facts ¶ 2.

[44] Lauer Aff. ¶ 3.

[45] CCS's Reply on the Debt at 1.

[46] Lauer's Response on the Debt at Section III. Statement of Additional Material Facts ¶ 2.

[47] Lauer Aff. ¶ 3.

[48] *See* Stephens Decl.

[49] *See* AT&T Wireless Statement for bill cycle dates September 15, 2013 – October 14, 2013, attached as Exhibit E to CCS's Motion on the Debt, docket no. 18-5, filed Oct. 13, 2014. *See also* AT&T Wireless Statement for bill cycle dates October 15, 2013 – November 14, 2013, attached as Exhibit B to CCS's Motion on the Debt, docket no. 18-2, filed Oct. 13, 2014.

[50] CCS's Motion on the Debt ¶ 9, at 4.

Stephens.[51] Mr. Lauer denies this proposed fact[52] and supports his denial with his own affidavit that AT&T told him the account was paid in full.[53] Furthermore, Mr. Lauer objects to the testimony of Ms. Stephens under Fed. R. Civ. P. 37(c)(1).[54]

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[55] A dispute of fact is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[56] However, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[57]

The party moving for summary judgment "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[58] When the movant is not the party that will bear the ultimate burden of persuasion at trial, it can make such a prima facie demonstration by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[59] If the movant carries its initial burden, the nonmovant "may not simply rest upon its

---

[51] Stephens Decl. ¶ 10; *see also See* AT&T Wireless Statement for bill cycle dates October 15, 2013–November 14, 2013, attached as Exhibit B to CCS's Motion on the Debt, docket no. 18-2, filed Oct. 13, 2014; *See* AT&T Wireless Statement for bill cycle dates October 15, 2013–November 14, 2013, attached as Exhibit B to CCS's Motion on the Debt, docket no. 18-2, filed Oct. 13, 2014.

[52] Lauer's Response on the Debt at Section II B. Response to Defendant's Undisputed Material Facts ¶ 9.

[53] Lauer Aff ¶ 3.

[54] Lauer's Response on the Debt at Section II B. Response to Defendant's Undisputed Material Facts ¶ 9.

[55] FED. R. CIV. P. 56(a).

[56] *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[57] *Id.*

[58] *Id.* at 670–71.

[59] *Id.* at 670.

pleadings,"[60] but must instead "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[61]

On summary judgment, the parties are entitled to use evidence from any source previously disclosed pursuant to Rule 26(a) of the Federal Rules of Civil Procedure.[62] Thus, any evidence used in a summary judgment motion that was *not* disclosed will be stricken and not considered in the summary judgment decision, but only if the failure to disclose was substantially unjustified or somehow harmful to the opposing party.[63]

To carry his or her burden of persuasion under § 1692e of the FDCPA, a plaintiff must prove that a "debt collector" has used "false, deceptive, or misleading representation or means in connection with the collection of any debt."[64] Therefore, falsely representing the "character, amount, or legal status of any debt" constitutes a breach of § 1692e.[65] The alleged misleading statement is analyzed under the "least sophisticated consumer standard" to ensure that "the FDCPA protects all consumers, the gullible as well as the shrewd."[66]

## ANALYSIS

### I. Mr. Lauer's Amended Complaint Simply Converts CCS's Motion on the Debt into a Motion for Partial Summary Judgment.

Mr. Lauer's first argument that his Motion for Leave to Amend somehow moots CCS's Motion on the Debt is incorrect. Mr. Lauer was given leave to amend his complaint on April 13,

---

[60] *Id.* at 671.

[61] *Id.*

[62] *See* FED. R. CIV. P. 37(c)(1)

[63] *See id.*; *Auraria Student Housing at the Regency, LLC v. Campus Village Apartments, LLC*, 2014 WL 4651643, at *2 to *3 (D. Colo. Sept. 18, 2014).

[64] 15 U.S.C. § 1692e.

[65] § 1692e(2)(A).

[66] *Ditty v. CheckRite, Ltd., Inc.*, 973 F.Supp. 1320, 1329–1330 (D. Utah 1997).

2014, and the First Amended Complaint was filed on the same day.[67] However, the amended complaint alleges the same FDCPA violations at issue here *in addition to* two new FDCPA violations.[68] Thus, Mr. Lauer's amendment provides no basis for denying CCS's Motion on the Debt. Instead, the current motion is considered as a motion for partial summary judgment disposing of certain claims instead of the entire case, and the issues CCS raises in the present motion remain relevant to Mr. Lauer's claims.

## II. The Declaration of Crystal Stephens is Not Stricken.

Mr. Lauer also argues that the declaration of Ms. Stephens, the declarant who offers a majority of the evidence supporting CCS's Motion on the Debt, should be stricken under Federal Rule of Civil Procedure 37(c)(1).[69] This rule states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[70]

Mr. Lauer "alleges that [CCS] never provided any initial disclosures in this matter, in violation of the Court's scheduling order."[71] According to Mr. Lauer, "[t]his means that it was never disclosed to Defendant [sic] in any way that Defendant intended to utilize the testimony of Ms. Stephens, the declarant whose testimony is the sole basis for the Motion." Mr. Lauer's attorney, Joshua Trigsted, filed a declaration[72] declaring under penalty of perjury that Mr. Lauer

---

[67] *See* Memorandum Decision and Order Granting Motion to Amend Complaint, docket no. 27, filed Apr. 13, 2015; First Amended Complaint.

[68] First Amended Complaint ¶¶ 10–11, at 2.

[69] Lauer's Response on the Debt at Section IV Discussion at 5 (Mr. Lauer did not number the pages of his filing).

[70] Fed. R. Civ. P. 37(c)(1).

[71] Lauer's Response on the Debt at Section IV Discussion at 5 (Mr. Lauer did not number the pages of his filing).

[72] Declaration of Joshua Trigsted in Opposition to Defendant's Motion for Summary Judgment, docket no. 21, filed Nov. 13, 2014.

did not receive initial disclosures from CCS[73] and that he "would have arranged a deposition of Ms. Stephens had [he] known [CCS] intended to use her as a witness in this matter."[74]

Contrary to the allegations of Mr. Lauer and Mr. Trigsted, CCS states that it mailed its initial disclosures to Mr. Lauer on September 26, 2014 and attached a copy of those disclosures to its Reply on the Debt.[75] Furthermore, CCS states that it "also finds it incredulous that if [Mr. Lauer] had not received [CCS]'s Initial Disclosures timely, he would not have reached out and asked [CCS] for a status, especial prior to taking the deposition of [CCS]'s 30(b)(6) witness.[76] It appears that CCS did not fail to provide initial disclosures, but that, for whatever reason, Mr. Lauer did not receive the mailed disclosures. However, as CCS argues, Mr. Lauer could have followed up on the apparent missed deadline, but chose not to. Therefore, there is no evidence that CCS failed to provide initial disclosures, thereby violating Rule 37(c)(1).

Furthermore, even if there was a Rule 37 violation, it would have been harmless, not confusing Mr. Lauer in the least as to the importance of AT&T representatives. In CCS's Initial Disclosures, CCS identifies as "persons likely to have discoverable information" "Representative(s) for AT&T; 108 South Akard Street, Dallas, TX 75202; (210) 821-4105. AT&T representative(s) will have knowledge and information concerning Plaintiff's account and the outstanding debt."[77] Similarly, Mr. Lauer also identified as "individual[s] likely to have discoverable information to support plaintiff's claim" "[a]ll employees of AT&T involved in any

---

[73] *Id.* ¶ 2.

[74] *Id.* ¶ 3.

[75] Defendant's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), attached as Exhibit F to CCS's Reply on the Debt, docket no. 24-1, filed Nov. 26, 2014.

[76] CCS's Reply on the Debt at 2–3.

[77] Defendant's Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) at I and I(1), attached as Exhibit F to CCS's Reply on the Debt, docket no. 24-1, filed Nov. 26, 2014.

way with [Mr. Lauer]'s account or with cancellation of accounts, in general."[78] Therefore, even assuming that CCS failed to provide initial disclosures, which is not supported by the evidence, Mr. Lauer has failed to show why this failure would not be entirely harmless where he affirmatively identified AT&T representatives in his own disclosures.

Thus, for the reasons stated above, the Declaration of Ms. Stephens is not stricken.

### III. CCS is Entitled to Rely on AT&T's Representation Regarding the Debt.

Mr. Lauer claimed that CCS violated 15 U.S.C. § 1692e(2)(a) by "[f]alsely representing the character, amount, or legal status of [his] debt, including repeatedly representing that [he] owes a debt de does not owe, even after [he] explained the basis for his dispute."[79]

However, under the FDCPA, a debt collector is entitled to rely on the representations of the creditor.[80] More specifically, in *Solomon v. Baer & Timberlake, P.C.*,[81] the Tenth Circuit upheld as correct the district court holding under the FDCPA that the debt collector "could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do."[82] There is no allegation that CCS distorted or misrepresented the amount of the debt to be collected; rather, Mr. Lauer's consistent argument is that the debt, pursued by CCS as reported by AT&T, never existed. Therefore, there is no dispute that CCS reasonably relied on the debt reported by AT&T. Mr.

---

[78] Plaintiff's *Corrected* Initial Rule 26 Disclosure Statement, docket no. 24-2, filed Nov. 26, 2014.

[79] First Amended Complaint ¶ 9, at 2, docket no. 28, filed Apr. 13, 2015.

[80] *See Solomon v. Baer & Timberlake, P.C.*, 504 Fed. Appx. 702, 705 (10th Cir. 2012) (defendant could not be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do); *see also Clark v. Capital Credit and Collection Services, Inc.*, 460 F.3d 1162, 1174 (9th Cir. 2006)

[81] 504 Fed. Appx. 702 (10th Cir. 2012).

[82] *Id.* at 705 (citing *Clark*, 460 F.3d at 1177 ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for an errors.")).

Lauer's only argument is that CCS has misstated the law and that debt collectors cannot simply rely on their clients.[83]

Surprisingly, Mr. Lauer cites to the same body of case law that establishes this right and argues that CCS must still prove the FDCPA exception for violations that were unintentional and resulting from a bona fide error.[84] Certainly, the FDCPA does exempt any violation that "was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."[85] But that exemption is embodied in the Tenth Circuit's holding in *Solomon*, for any misrepresented amount would necessarily be unintentional and the result of bona fide error where the debt collector "reasonably relied upon information from its client, which it is permitted to do."[86]

More surprising still, Mr. Lauer "asks the Court to consider the plain language of the statute, which the Supreme Court holds must govern unless it would create an absurd result,"[87] and hold that "the plain language indicates that [CCS] can be liable for falsely stating that plaintiff owes a debt when he does not."[88] First, Mr. Lauer argues a reading of the FDCPA that, at best, is much narrower than the Tenth Circuit articulated in *Solomon*, but actually contradicts the Tenth Circuit's holding that a debt collector will not be held liable for reasonably relying on its client. Second, the FDCPA does not require debt collectors to independently investigate the

---

[83] Lauer's Response on the Debt at Section IV Discussion at 6–7 (Mr. Lauer did not number the pages of his filing).

[84] *Id.*

[85] 15 U.S.C. § 1692k(c).

[86] *Solomon*, 504 Fed. Appx. at 705 (citing *Clark*, 460 F.3d at 1177 ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for an errors.")).

[87] Lauer's Response on the Debt at Section IV Discussion at 7 (Mr. Lauer did not number the pages of his filing) (citing *Small v. U.S.* 544 U.S. 385 (2005)).

[88] *Id.*

debts presented by the underlying creditor.[89] Third, it would be improper for a court to add an additional unexpressed requirement to the FDCPA that a debt collector first investigate every debt before it pursues collection of those debts.

Mr. Lauer's arguments are unpersuasive and not founded on either the text of the statute or the binding Tenth Circuit precedent. Therefore, CCS validly relied on AT&T's representations regarding Mr. Lauer's debt, and as in *Solomon*, CCS cannot "be held liable for any alleged misrepresentations about the amount of the debt because it reasonably relied upon information from its client, which it is permitted to do."[90] Moreover, it appears clear from the evidence[91] that AT&T billed new charges to Mr. Lauer after a given service period, i.e. from the 15th day of the first month to the 14th day of the second month, and an automatic payment was made on the 7th of the third month. Therefore, although it is irrelevant to the disposition of this motion where CCS reasonably relied on AT&T's report of the debt, it appears that the November 7, 2013 automatic payment was for services provided to Mr. Lauer from September 15 – October 14, 2013, meaning the debt is valid.

### IV. There Are No Genuine Disputes of Material Fact and CCS is Entitled to Partial Summary Judgment.

CCS is entitled to partial summary judgment. Of great practical concern in Mr. Lauer's FDCPA claim, and consequently the disputed facts,[92] is the issue of whether he in fact owes a

---

[89] *See Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (a debt collector is not required to review and dispute a creditor's construction of a contract or investigate the information provided by a collector when trying to collect a debt).

[90] *Solomon*, 504 Fed. Appx. at 705 (citing *Clark*, 460 F.3d at 1177 ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for an errors.")).

[91] *See* AT&T Wireless Statement for bill cycle dates September 15, 2013–October 14, 2013, attached as Exhibit E to CCS's Motion on the Debt, docket no. 18-5, filed Oct. 13, 2014; AT&T Wireless Statement for bill cycle dates October 15, 2013–November 14, 2013, attached as Exhibit B to CCS's Motion on the Debt, docket no. 18-2, filed Oct. 13, 2014; and AT&T Wireless Statement for bill cycle dates November 15, 2013–December 14, 2013, attached as Exhibit C to CCS's Motion on the Debt, docket no. 18-3, filed Oct. 13, 2014.

[92] *See* Disputed Facts, *supra*.

debt to AT&T. However, as stated above[93] and in *Solomon*,[94] CCS cannot be held liable where it reasonably relied upon information from AT&T. Therefore, the five disputed facts in this case are not relevant and, consequently, cannot preclude summary judgment in favor of CCS.

More specifically, Mr. Lauer disputes that the amount assigned to CCS for collection was for an amount owed by Mr. Lauer,[95] but whether Mr. Lauer actually owed the $114.25 reported by AT&T is not relevant under 15 U.S.C. § 1692e(2)(A) as interpreted in *Solomon*. Similarly, Mr. Lauer disputes that the November 7, 2013 automatic payment was for the service dates of September 15, 2013 – October 14, 2013,[96] but again, whether Mr. Lauer actually owed the $114.25 reported by AT&T is not relevant. Mr. Lauer also proposed facts related to a call with AT&T wherein a cancelation date was discussed,[97] but the precise date of cancellation truly relates to whether Mr. Lauer actually owed the debt, and furthermore, neither AT&T nor CCS argue that Mr. Lauer could or should have been or was actually billed for a service period running from October 15 – November 14, 2013. Finally, Mr. Lauer's proposed fact that AT&T told him that his "account was already paid up through [the end of the contract] and that nothing more would need to be paid"[98] is only relevant to whether he actually owed the debt, not to CCS's reasonable reliance on the report from AT&T.

Therefore, none of the disputed facts are material to this motion, and therefore, CCS is entitled to judgment as a matter of law.

---

[93] *See* Analysis, *supra*, at Section III.

[94] 504 Fed. Appx. at 705 (citing *Clark*, 460 F.3d at 1177 ("[I]f a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for an errors.")).

[95] *See* Disputed Facts, *supra*, ¶ 1.

[96] *See id.* ¶ 5.

[97] *See id.* ¶¶ 2–3.

[98] Lauer's Response on the Debt at Section III. Statement of Additional Material Facts ¶ 2.

**ORDER**

For the foregoing reasons, CCS's Motion on the Debt,[99] now considered as a motion for partial summary judgment, is GRANTED. Mr. Lauer's remaining claims are for an alleged failure to disclose the caller's individual or corporate identity in telephone communications (a violation of 15 U.S.C. § 1692d(6))[100] and an alleged failure to notify during each collection call that the communication was from a debt collector (a violation of 15 U.S.C. § 1692e(11)).[101]

Signed this 29th day of September, 2015.

BY THE COURT

David Nuffer
United States District Judge

---

[99] Docket no. 18, filed Oct. 13, 2014.

[100] First Amended Complaint ¶ 10, docket no. 28, filed Apr. 13, 2015.

[101] *Id.* ¶ 11.